UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT GARDNER,                          )
                  Plaintiff,             )
                                         )        No. 1:11-cv-00802
-v-                                      )
                                         )        HONORABLE PAUL L. MALONEY
MICHIGAN STATE UNIVERSITY BOARD OF       )
TRUSTEES, and                            )
LOU ANNA SIMON,                          )
                  Defendants.            )
_____)

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND ORDERING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT

In this case, Plaintiff Robert Gardner brings a number of claims against Defendants Michigan State University Board of Trustees ("MSU") and Lou Anna Simon, the current president of Michigan State University, for actions they have allegedly taken to deprive Mr. Gardner of his civil rights and retaliate against him for a prior discrimination claim. Before the court today is Defendants' Motion to Dismiss. (ECF No. 21.)

Having reviewed the motion, response, and relevant legal authority, the Court finds the matter can be resolved without oral argument. *See* W.D. Mich. L. Civ. R. 7.2(d). For the reasons discussed herein, the court will grant Defendants' motion in part and deny it in part.

## I.    LEGAL FRAMEWORK

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. Though a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the complaint must include "more than labels[,] conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "sufficient

factual matter" that, if accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). In reviewing such a motion, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). The court need not accept plaintiff's legal conclusions, however. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369.

A Rule 12(b)(6) motion to dismiss is based on the pleadings themselves, and a court is generally confined to those pleadings in deciding the motion. But "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* at 335–36 (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). And "[a] court may also consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336 (citing *Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004)).

## II.   BACKGROUND

### A.   Procedural History

Plaintiff Robert Gardner filed this case on August 2, 2011.  The original complaint, filed on this court's *pro se* Civil Rights Complaint Form, contained little more than a claim that "[p]otential employers at MSU were ordered not to hire [Plaintiff] or pursue funding [for his employment] because of [his] previously filed Civil Rights complaints."  (ECF No. 1.)  Mr. Gardner further claimed, without specifics, that Defendants had also interfered with his doctoral education and with potential employment unaffiliated with MSU.

Defendants Michigan State University—later replaced by the Michigan State University Board of Trustees ("MSU")—and Lou Anna Simon, president of the University, moved for a more definite statement (ECF No. 7), arguing that this complaint did not provide enough detail for them to understand the claims that Mr. Gardner was making.  Magistrate Judge Scoville held a hearing on the motion, during which he discussed the need for Plaintiff to provide more information about his claims.  (*See* ECF No. 15.)  "The complaint has to be clear enough so that everybody understands what happened, when it happened, and why," Judge Scoville noted.  He explained to Mr. Gardner that "before our court can do anything we need a comprehensible statement of what happened."  Judge Scoville then talked Mr. Gardner through his allegations, repeatedly asking for more detail as to the timeline and the parties involved.  "[W]hat I'm trying to do is sort of instill in your mind the discipline of saying what happened, when, with whom, so we can figure out."

Judge Scoville gave Mr. Gardner a month to file an amended complaint, stating in his Order that "plaintiff must file and serve an amended complaint, alleging his claims with specificity.  The amended complaint must, among other things, identify each department or other unit of Michigan

State University that plaintiff claims he was employed by or contracted to work for, the dates of service, and the specific wrongful acts upon which plaintiff bases his Title VII claims."  (ECF No. 16.)

### B.    Plaintiff's Amended Complaint

On November 28, 2011, Mr. Gardner filed an Amended Complaint.  (ECF No. 19.)  In it, he alleges six causes of action: (1) a retaliation claim under Title VII; (2) the same retaliation claim under Michigan's Elliott-Larsen Civil Rights Act; (3) a claim under 42 U.S.C. § 1983 against Defendant MSU; (4) a claim under 42 U.S.C. § 1985; (5) a claim of tortious interference with his contract rights; and (6) a claim of "retaliatory harassment" against Defendant Simon "and her immediate administration."   In support of these claims, Mr. Gardner makes the following allegations.

Early in his Ph.D. program at MSU, Mr. Gardner filed a civil rights complaint against the school and/or its staff.  Since that time, he claims, Defendants[1] have taken retaliatory action against him, "stripp[ing] Plaintiff of his financial aid . . . and work[ing] to terminate his program at every juncture."  Mr. Gardner alleges that Defendant Simon terminated his program "based on pretextual arguments," though his doctorate work is almost complete, and that she has argued against an affirmative-action program that plaintiff had proposed.  Mr. Gardner also alleges that "[s]upporting professors have been administratively pressured not to help Plaintiff pursue a Ph.D." and that MSU's

---

[1]      Specifically, Plaintiff's complaint here—and largely throughout—refers only to "Defendant" in the singular.  Arguably, these allegations are improperly ambiguous as to which defendant Mr. Gardner intends to accuse, but it appears from the Amended Complaint that Mr. Gardner's use of the singular is often meant to refer to both defendants.  (*See* Am. Compl., ECF No. 19 (caption, referring to "Michigan State University Board of Trustees and Lou Anna Simon, Jointly[,] **Defendant**" (emphasis added)).)  Therefore, the court will read Mr. Gardner's singular to refer to both defendants except when context clearly suggests otherwise.

General Counsel has "interfered with the process" of re-enrolling Mr. Gardner into his doctorate program. Mr. Gardner states that under MSU policy, the members of his Ph.D. committee, rather than Defendant Simon, have discretion to determine his educational status. Mr. Gardner argues that these actions are racially motivated, as similarly situated white students are being held to different standards and Ms. Simon "has used Plaintiff's purported Ph.D. dismissal to discourage support for [his] affirmative action programs." These allegations, he claims, are currently being investigated by the Michigan Department of Civil Rights.

Mr. Gardner also alleges that Defendants have retaliated against him on numerous occasions by interfering with his employment. He refers to an unspecified "earlier MSU departmental attempt to hire Plaintiff as a professor working with the Latino population." He alleges that this attempt "was met with a verifiably falsified affidavit garnered by General Counsel" and a false response to Plaintiff's complaint with the Michigan Department of Civil Rights. He also claims, apparently in association with this same potential job, that Defendant Simon told the Board of Trustees that he was not able to hold the job "because of his past Civil Rights complaint." Next, Mr. Gardner alleges that he "was fired from his job as an Accounting professor at the local Community College (in front of his students) when he filed a related EEOC complaint with the given explanation that it was because of his Civil Rights complaint against MSU." Mr. Gardner then claims, without further detail, that "[s]everal state and federal agency heads, tribal leaders and legislators have since relinquished support of and funding for Plaintiff's employment efforts . . . because of pressure from MSU administrators."

Mr. Gardner also claims that a number of MSU professors "have similarly relinquished their working relationships with Plaintiff since Plaintiff left Lansing Community College." Mr. Gardner lists seven such job opportunities, providing time frames for all but one:

> (1)    Department of Resource Development – July 2006 to October 2007.
>
> (2)    College of Labor and Industrial Relations / MSU Extension / MSU College of Law – November 2007 to August 2008.
>
> (3)    Department of Entomology – (no time frame given).
>
> (4)    Julian Somorra Research Institute – Summer 2009.
>
> (5)    MSU Spanish Department – June 2009 to October 2009.
>
> (6)    Julian Somorra Research Institute – Fall 2010 to March 2010 [sic; presumably 2011].
>
> (7)    The Native American Institute – April 2011 to August 2011.

Mr. Gardner further claims that various outside entities have become involved, "conspiring with" Defendants "to thwart Plaintiff's Civil Rights and interfering with contractual obligations." Under this heading, he alleges that U.S. Department of Agriculture personnel, "working with MSU administrators," discouraged local support for Mr. Gardner's employment and later rescinded an offer of money to allow Mr. Gardner to be hired at MSU. Similarly, the Michigan Department of Agriculture stopped supporting one of his programs on the ground that he had no MSU affiliation. Next, he alleges that the director of Farmworker Legal Services, along with "MSU administrators," pressured the MSU College of Law to stop Mr. Gardner from working with the College of Law, and the Director of the Migrant Resource Council ordered Mr. Gardner not to work with local migrant resource councils because he was not affiliated with MSU. Mr. Gardner alleges that these "accusations could only have been made through information provided by MSU personnel." Mr.

Gardner also claims, without further detail, that the American Journal of Agriculture Economics rejected one of Mr. Gardner's articles and that the Federal Bureau of Indian Affairs and various Indian tribes have withdrawn financial support from Mr. Gardner. Finally, Mr. Gardner alleges that MSU recently questioned a scholarship that Mr. Gardner's daughter's high school had given her to attend MSU classes, after which the school rescinded the scholarship for Mr. Gardner's daughter, then for all other students.

Regarding his Title VII claim for retaliation, Mr. Gardner alleges that he has filed charges with the Equal Employment Opportunity Commission ("EEOC"), received a notice of right to sue, and filed this suit within 90 days of receiving the notice. He noted, however, that Michigan's Department of Civil Rights was still reviewing his claims regarding "Defendant's current efforts to prevent Plaintiff from completing his doctorate" and "Defendant's termination and interference of Plaintiff's employments working with Native American agriculture population."

## III.   DISCUSSION

Plaintiff's Amended Complaint contains more information than did his original complaint. However, as should be clear from the summary above, the Amended Complaint still suffers from a dearth of specifics regarding the incidents that Plaintiff alleges. Despite Judge Scoville's repeated exhortations to be "specific as to people, dates, and times," Mr. Gardner largely failed to provide even the minimal amount of information needed to establish a timeline of events and persons involved.[2]

Nevertheless, the detail contained in this complaint was enough for Defendants to move to

---

[2]      The court reminds Plaintiff to follow Court orders. Contemporaneous and included in this Order is an Order for Plaintiff to file a second amended complaint as to the remaining claims.

dismiss Mr. Gardner's claims. Defendants make several distinct claims in their motion, which is aimed solely at Mr. Gardner's federal causes of action. They argue that Mr. Gardner's section 1983 and section 1985 claims fail because neither Defendant is a "person" under the Civil Rights Act, and because these claims are barred by the statute of limitations. Defendants similarly argue that Mr. Gardner's Title VII count is time-barred, because the relevant events were not included in his EEOC claim and because he failed to file this case within 90 days of receiving the right-to-sue letter. Finally, Defendants argue that even if these counts survive the other grounds for dismissal, he simply fails to state a claim.

## A.      "Persons" Under the Civil Rights Act

Defendants' first argument is that neither of them are "persons" for purposes of 42 U.S.C. §§ 1983 and 1985 (Mr. Gardner's claims 3 and 4, respectively), and therefore Plaintiff's claims fail as a matter of law.

This is only partly true, however. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Similarly, "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," and state officials sued in their official capacity, are not "persons" under section 1983. *Id.* at 70–71. Michigan State University is an arm of the state of Michigan, and it is therefore not considered a "person" for purposes of section 1983. *See, e.g.*, *Dillon-Barber v. Regents of Univ. of Mich.*, 51 F. App'x 946, 952 (6th Cir. 2002) (holding that "the University is not a 'person' under § 1983"); *Hill v. Bd. of Trustees of Mich. State Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001) ("Courts within this district have held that MSU is an "arm of the state" entitled to Eleventh Amendment immunity. . . .  In addition, as a state entity, MSU is not a

8

'person' subject to suit for damages under § 1983.") (citing *Williams v. Mich. State Univ.*, No. 1:93-cv-72, 1994 WL 617272, at *4 (W.D. Mich. Jan.3, 1994); *Weisbord v. Mich. State Univ.*, 495 F. Supp. 1347, 1355 (W.D. Mich. 1980)).

As president of MSU, Defendant Simon is a state official, and therefore to the extent that she is being sued for damages in her official capacity, she is also not a 'person' under section 1983. But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"[3] *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Similarly, suit against Defendant Simon in her individual capacity would be proper under section 1983, as she would be considered a "person" in that scenario.

For the same reasons, Defendant MSU will not be considered a "person" under section 1985, and Defendant Simon will only be considered a "person" under the statute to the extent she is sued in her individual capacity or to the extent Mr. Gardner seeks injunctive relief. *See, e.g.*, *Bennun v. Bd. of Governors of Rutgers*, 413 F. Supp. 1274, 1280 (D.N.J. 1976) ("Defendant, Board of Governors, moves to dismiss on the ground that it is not a 'person' within the meaning of either Section 1983 or Section 1985. That motion will be granted."); *cf. An-Ti Chai v. Mich. Tech. Univ.*, 493 F. Supp. 1137, 1148 n.13 (W.D. Mich. 1980) (holding that "the arguments pertaining to who

---

[3]    This statement runs directly counter to Defendants' counsel's claim that "*Will* clarified that a suit against a state official in his official capacity is no different from a suit against the State itself." (Mtn. for Dismissal, ECF No. 21, at 5–6.) Defendants' attorney, as part of MSU's office of General Counsel, was presumably well aware of this aspect of civil-rights law even before he cited this very page of the *Will* decision for the opposite proposition. Counsel is reminded that he has a duty of candor toward the court and shall not, under the Michigan Rules of Professional Conduct, "knowingly . . . make a false statement of material fact or law to a tribunal." M.R.P.C. 3.3(a).

9

is a 'person' under Section 1983 would parallel argument concerning 'persons' under Section 1981" and that "Section 1981 and 1983 are *in pari materia*").

Plaintiff's count 3, his section 1983 claim, is expressly brought only against Defendant MSU. Because MSU is not a "person" for purposes of section 1983, this claim necessarily fails. Plaintiff's section 1985 claim in count 4, to the extent it is brought against Defendant MSU, similarly fails. But Plaintiff also asserts count 4 against Defendant Simon, seeking both damages and injunctive relief. To the extent Plaintiff seeks injunctive relief, this claim may not be dismissed at this point. Further, to the extent Plaintiff seeks money damages from Defendant Simon in her individual capacity, this claim will also survive.

In determining whether suit has been brought against a state official as an official or as an individual, the Sixth Circuit employs a "course of proceedings" test, which looks at the parties' filings and statements to "whether the defendant had actual knowledge of the potential for individual liability." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc). Plaintiff's Amended Complaint does not explicitly state whether he intended to sue Ms. Simon in her official capacity, her individual capacity, or both. But, as in *Moore*, Plaintiff's Amended Complaint lists only Ms. Simon's name, not her official title, and he seeks compensatory and punitive damages against her in addition to injunctive relief. Further, Mr. Gardner expressly states in his Response that he intends to bring suit against Ms. Simon in her individual capacity. *Id.* at 773–74. The court in *Moore* found that a similar statement, made at the motion-to-dismiss stage, "clarified any remaining ambiguity" on this topic. *See id.* at 774 (noting that "[s]ubsequent filings in a case may rectify deficiencies in the initial pleadings"). On the similar facts here, *Moore* appears to control. Plaintiff is deemed to have sued Ms. Simon in her individual and official capacities, and count 4

therefore survives as to her.[4]

### B.     Statute of Limitations for Section 1983 and Section 1985 Claims

Defendants argue that Mr. Gardner's section 1983 and section 1985 claims are barred by the statute of limitations, correctly noting that these claims are subject to the same statute of limitations as applies to personal-injury claims in that state.  *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (holding that state personal-injury statute of limitations applies to § 1983 actions); *Stevenson v. Rayloc*, 114 F. App'x 167, 169 (6th Cir. 2004) (applying same statute of limitations to § 1983 and § 1985 claims).  In Michigan, the relevant time frame is three years.  *See* Mich. Comp. L. § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986).  Mr. Gardner filed this action on August 2, 2011.  Therefore, causes of action that accrued before the same date in 2008 will be barred.

The statute of limitations is an affirmative defense for which the defendants bear the burden of proof.  *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992).  As such, a plaintiff is not typically required to plead facts establishing that the statute of limitations does not apply.  *See* 5A Charles Alan Wright et al., Federal Practice & Procedure §§ 1308–09.  Where the plaintiff does allege dates, however, they are considered material and may be the basis for a motion to dismiss.  *See Hoover*, 958 F.2d at 744 (citing Fed. R. Civ. P. 9(f)).

Mr. Gardner admits in his response brief that some of his allegations—in particular, those regarding his loss of financial aid and Ph.D. support, as well as the loss of his job at the community college—fall outside the statute of limitations.  He argues, however, that these events are relevant

---

[4]      It is far from clear that Plaintiff's section 1985 claim may proceed with Ms. Simon as the sole conspirator, but as the parties have not briefed this point, the court will not address it at this time.

because they show a history of retaliatory discrimination.  The court will address the relevance of these allegations at an appropriate time.  They may not, however, form the basis for Mr. Gardner's section 1985 claim.  Of the claims that Mr. Gardner does put a date to, one falls entirely outside of the statute of limitations period.  His allegations regarding MSU's Department of Resource Development between July 2006 and October 2007, therefore, also cannot state a section 1985 claim.

But Mr. Gardner's Amended Complaint includes several allegations that expressly fall within the statute of limitations period, such as his allegation that between April and August of 2011, the Director of the Native American Institute agreed to hire him, then reversed his position "because of [Mr. Gardner's] previously filed civil rights complaints."  This precludes full dismissal of Mr. Gardner's claim at this point.

### C.      Exhaustion of Remedies – Title VII Claim

A person seeking to bring a Title VII employment discrimination charge in federal court must first exhaust his or her administrative remedies by filing a claim with the Equal Employment Opportunity Commission ("EEOC") or with "a State or local agency with authority to grant or seek relief from such practice."  42 U.S.C. § 2000e-5(e)–(f).  The agency will then decide whether to prosecute the charge itself.  If it decides against prosecution, it will notify the petitioner in what is commonly called a "right to sue" letter.  *Id.* § 2000e-5(f)(1).

Title VII provides several time bounds on this process.  First, 42 U.S.C. § 2000e-5(e)(1) provides that the petitioner shall bring his to the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or to the state agency within 300 days.  *Id.* Then, after the petitioner receives the right-to-sue letter, he has 90 days to file suit.  *Id.* §

2000e-5(f)(1).  Claims outside of the right-to-sue letter, and cases filed after this 90-day period, are typically barred.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10 (2002); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998).

These are not jurisdictional requirements, however; instead, the courts treat them as statutory prerequisites, "in the nature of a statute of limitations."  *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 620 (6th Cir. 1983); *see also Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Rivers*, 143 F.3d at 1032 ("Accordingly, we hold that the right-to-sue letter is a condition precedent and not a jurisdictional requirement.").  As such, failure to satisfy these requirements is an affirmative defense that must be pleaded by the defendant, and the plaintiff himself need not plead facts sufficient to show that his claims satisfy these conditions. *See Berger v. Medina Cnty. Ohio Bd. of Cnty. Comm'rs*, 295 F. App'x 42, 45 (6th Cir. 2008) ("To be sure, Berger did not have to say anything in her complaint about meeting Title VII's filing deadline.") (citing *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005) ("[T]he period of limitations is an affirmative defense that a complaint need not address. Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.")).  Where the complaint affirmatively shows a failure to satisfy the statutory prerequisites, however, the court may dispose of the barred claims on a Rule 12(b)(6) motion to dismiss.  *See id.* at 44 ("There was no basis in the record before the district court, on defendant's Rule 12(b)(6) motion, to do anything but dismiss the case as untimely.").

Defendants argue that each of these deadlines bars at least some of Mr. Gardner's claims.

Additionally, they argue that some of Mr. Gardner's claims were not in fact part of his claim to the EEOC and therefore should be barred.

      1.     The EEOC's 90-Day Limitation

The Amended Complaint alleges that Mr. Gardner filed charges with the EEOC, that he received a right-to-sue letter "on or about April 2, 2011," and that he timely filed this case within 90 days of receiving the letter. Defendants note that Mr. Gardner filed this suit on August 2, 2011, more than 90 days after April 2, 2011. Therefore, Defendants argue, the Title VII claim must be dismissed.

Mr. Gardner argues that he submitted the right-to-sue letter with his initial complaint. It is possible that Mr. Gardner served a copy on Defendants, but this court's docket and the case file show no evidence that Mr. Gardner attached the letter either to his original Complaint or to his Amended Complaint. This failure is unfortunate, because the actual document, as attached to Plaintiff's response brief, shows that the EEOC issued the letter on *May* 3, 2011, which would place this suit squarely within the 90-day time frame. On a motion to dismiss, the court is typically limited to considering only the pleadings themselves. But "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). Mr. Gardner directly references the right-to-sue letter in his Amended Complaint, and as a precondition to suit, the letter is clearly integral to his claims. The court therefore considers the letter, and on that

basis declines to dismiss Mr. Gardner's entire Title VII claim as time-barred.[5]

### 2.      The EEOC's 180-Day Limitation

Defendants allege that Mr. Gardner's claims are subject to the 180-day deadline, rather than the 300-day limitation, and Plaintiff does not dispute this point.  Defendants argue, therefore, that any claims that arose more than 180 days before Mr. Gardner received his right-to-sue letter could not be part of the right-to-sue letter and are therefore barred.

This argument is unconvincing.  The statute provides that a petitioner **may bring claims to the EEOC** within 180 days of an alleged unlawful employment practice, not that the claims must have occurred within 180 days of the issuance of a right-to-sue letter.  42 U.S.C. § 2000e-5(e)(1).  The date of the right-to-sue letter therefore says nothing about the date the 180-day deadline should be measured from.  The record contains no evidence of when Mr. Gardner initially filed his claims with the EEOC, and therefore the court has no basis on which to dismiss Mr. Gardner's claims as untimely.

### 3.      The Scope of the Right-to-Sue Letter

Defendants further argue that some of Mr. Gardner's claims are barred because they fall outside of the scope of his EEOC charge.  Mr. Gardner admits that his right-to-sue letter does not cover his claims regarding the Native American Institute.  He argues, however, that this allegation is included "as further proof of Defendant's agenda to discredit Plaintiff," and that he "assumes an

---

[5]      Moreover, even if this letter is not properly considered for this motion to dismiss, full dismissal would be improper.  Though the Amended Complaint lists the wrong date on which Mr. Gardner received the right-to-sue letter, it also hedges by stating that he received it "on or about" that date, and it further alleges that the case was "filed within ninety (90) days of the receipt of the notice of right to sue."  Defendants state no reason why the "on or about" date should be privileged over the clear statement of compliance with the 90-day deadline, and the court declines to do so.

adverse action" and did not want to lose his claims under the current right-to-sue letter.

These arguments do not provide reason for the court to skip the administrative procedure specifically provided for by Congress, particularly when Mr. Gardner gives no evidence to support his claim of futility. *See Parnell v. West*, 114 F.3d 1188 (Table) (6th Cir. 1997) (unpublished) (rejecting futility argument). The court will not now rule on whether, and to what extent, Mr. Gardner can introduce evidence of other bad actions by Defendants in support of his claims, but in any case, such other bad acts would not themselves be separate claims. Therefore, Mr. Gardner's Title VII claim must be dismissed to the extent it is based on Mr. Gardner's allegations regarding the Native American Institute.

Similarly, the Amended Complaint admits that Michigan's Department of Civil Rights is still reviewing Mr. Gardner's claims regarding "Defendant's current efforts to prevent Plaintiff from completing his doctorate." Mr. Gardner therefore lacks a right-to-sue letter regarding these claims, and his Title VII count will be dismissed as to them as well.

### D.    Failure to State a Claim Upon Which Relief Can Be Granted

Finally, Defendants argue that Mr. Gardner simply fails to state a claim on which relief can be granted, even if his claims survive Defendants' other arguments. Specifically, Defendants argue that Mr. Gardner "is not entitled to the beneficial understanding that would ordinarily flow from a claimant's assertion that he was 'hired' for a given position and that the employer then reneged on the hiring decision." They point out that Mr. Gardner repeatedly alleges that various unnamed persons agreed to hire him, only afterward seeking the necessary grant funds or research approvals. This sequence of events, Defendants argue, "undercut[s] the aptness of Plaintiff's use of the word 'hire.'"

16

But even assuming that this logic holds, it is unclear how the conclusion requires dismissal of Plaintiff's claims. Having already been hired for a job is not a necessary element of Mr. Gardner's retaliation claim. The statute operates more broadly, prohibiting employers from discriminating "against any of [their] employees *or applicants for employment* . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Defendants provide no further explanation or argument on this point, however, and so the court must deny their motion.

## IV.   CONCLUSION

Mr. Gardner's Amended Complaint is indeed quite vague regarding many important facts. His dispute with MSU goes back more than a decade, involving numerous departments and individuals within the school, and his complaint contains numerous allegations that appear to fall outside of the statute of limitations period. But a complicated background and failure to fully specify the timeline of events are not grounds to dismiss this *pro se* plaintiff's case. When construed in the light most favorable to Mr. Gardner, his complaint cannot be found so deficient as to fail entirely at this stage.

The parties will have an opportunity during discovery to clarify the particular issues, time frames, and persons involved in this case. The court anticipates that post-discovery motion practice will be able to simplify the case going forward.

**ORDER**

For the reasons provided in the accompanying opinion, Defendants' Motion to Dismiss (ECF

No. 21) is **GRANTED IN PART AND DENIED IN PART**:

1.  Count I (Title VII) is **DISMISSED** without prejudice to the extent it is based on Plaintiff's allegations regarding the Native American Institute or regarding Defendants' alleged efforts to prevent Plaintiff from completing his doctorate;

2.  Count III (42 U.S.C. § 1983) is **DISMISSED** with prejudice;

3.  Count IV (42 U.S.C. § 1985) is **DISMISSED** with prejudice as to Defendant MSU and **DISMISSED** with prejudice to the extent it seeks monetary damages against Defendant Simon in her official capacity; and

4.  Counts III and IV are **DISMISSED** with prejudice to the extent that they are based on Plaintiff's loss of financial aid and Ph.D. support, the loss of his job at the community college, or his allegations regarding MSU's Department of Resource Development between July 2006 and October 2007;

5.  Otherwise, Defendants' Motion to Dismiss is **DENIED**;

6.  Plaintiff shall, no later than **February 27, 2012**, file and serve a second amended complaint:

    a.  omitting the current Count III (42 U.S.C. § 1983);

    b.  omitting Defendant MSU from Count IV (42 U.S.C. § 1985);

    c.  naming each individual involved in the actions and incidents alleged; and

    d.  identifying, as precisely as possible, the dates on which the alleged actions and incidents occurred.

Plaintiff shall not add new claims, allegations, or parties to this second amended complaint.

**IT IS SO ORDERED.**

Date:   February 2, 2012                                  /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  Chief United States District Judge